UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ABT SYSTEMS, LLC, et al., ) | |
| ) | |
| Plaintiffs / Counterclaim Defendants, ) | |
| ) | |
| vs. ) | Case No. 4:11CV00374 AGF |
| ) | |
| EMERSON ELECTRIC CO., ) | |
| ) | |
| Defendant / Counterclaim Plaintiff. ) | |

## MEMORANDUM AND ORDER

This patent infringement case is before the Court on the motion of Defendant/Counterclaim Plaintiff Emerson Electric Co.'s ("Emerson") to compel Plaintiffs/Counterclaim Defendants ABT Systems, LLC, and The University of Central Florida Board of Trustees (jointly "ABT") to produce correspondence related to settlement and licensing negotiations between ABT and three former Defendants in this case[1] that have reached settlements with ABT and have been dismissed from the action. For the reasons set forth below, the motion to compel shall be denied, except to the extent that the settlement negotiations may have discussed prior art not previously disclosed.

## BACKGROUND

ABT claims in this action that thermostats manufactured and/or sold by Emerson infringe two patents held by ABT. ABT seeks damages under 35 U.S.C. § 284 of a reasonable royalty, treble damages if the alleged infringement is found to be wilful, an injunction prohibiting further infringement, and attorney's fees. Emerson filed a counterclaim for declaratory judgment of

---

[1] Braeburn Systems, Inc.; Lennox International, Inc.; and Lux Products, Inc.

noninfringement, invalidity, and unenforceability, due in part to ABT's alleged misrepresentations to the Patent and Trademark Office regarding the scope of prior art.

It is undisputed that the actual settlement/license agreements between ABT and the settling Defendants in the case have been produced by ABT to Emerson, so Emerson is aware of the royalty rates set forth in those licenses. In support of its motion to compel production of settlement-related correspondence between ABT's counsel and counsel for the settling Defendants, Emerson argues that the documents are not privileged and are relevant "at least to the issue of damages," and may also have some relevance to Emerson's anticipation or obviousness defenses in that the correspondence may identify or discuss prior art references not previously disclosed. Emerson relies on the recent decision by the Federal Circuit, *In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012), which held that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege. *Id.* at 1344.

ABT argues that because Emerson's discovery request was late, the admissibility standard of Federal Rule of Evidence 408(a) should guide the Court's ruling on the motion to compel, rather that the relevancy standard of Federal Rule of Civil Procedure Rule 26(b)(1) that governs discoverability of evidence. ABT argues that Emerson's motion to compel should be denied because Rule 408(a) forbids Emerson from using the attorney correspondence to support the sole issue advanced by Emerson as to the need for the correspondence, namely, the amount of a reasonable royalty in this case, or in terms of Rule 408(a), the "amount of a disputed claim." ABT relies on emails from August 24, 2012, between its counsel and counsel for Emerson to support its assertion that this is the only purpose for which Emerson seeks the attorney communications.

ABT also asserts that the attorney communications at issue are voluminous (involving hundreds of emails) and will be burdensome to produce, as they are filled with attorney-client privileged materials that would have to be redacted. ABT asks that it not be required to go through the expense of redaction and production, "[g]iven the limited relevance [the communications] could possibly have to this case." (Doc. No. 254 at 3.) ABT notes that the settling Defendants are all direct competitors of Emerson, and would likely have confidentiality concerns regarding the communications at issue.

Emerson replies that its discovery request was not untimely, and that without seeing the documents in question it cannot know their relevancy.

## **DISCUSSION**

In a patent infringement case, Federal Circuit law applies in determining whether a privilege or other discovery limitations protect disclosure of information related to reasonable royalties because that issue "implicates the jurisprudential responsibilities of [the federal court] within its exclusive jurisdiction." *In re MSTG, Inc.,* 675 F.3d at 1341.

The Court first rejects ABT's argument based upon the timing of Emerson's discovery request, and concludes that Rule 26(b)(1), which provides that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," governs the dispute at issue. Under this Rule, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ P. 26(b)(1). Emerson, as the moving party, bears the burden of showing that the requested documents are discoverable within the meaning of the Rule. *Cent. States, SE & SW Areas Pension Fund v. King Dodge, Inc.*, No. 4:11MC00233 AGF, 2011 WL 2784118, at *2 (E.D. Mo. July 15, 2011).

In general, the Federal Rules promote a "broad and liberal policy of discovery for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *In re MSTG, Inc.*, 675 F.3d at 1346. However, Rule 26(b)(2)(C) provides that courts are required to "limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

The Court here concludes that Emerson's reliance on *In re MSTG, Inc.* is misplaced. Indeed, as noted above, the Federal Circuit in that case held that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege. The Federal Circuit noted that although in Federal Rule of Evidence 408, Congress limited the admissibility of evidence related to compromise offers and settlement negotiations, it "did not take the additional step of protecting settlement negotiations from discovery." *In re MSTG, Inc.*, 675 F.3d at 1344. Statements made during settlement negotiations may be admissible for purposes other than the prohibited uses under Rule 408(a) of impeachment or to prove or disprove the validity or amount of a disputed claim. The Eighth Circuit has not adopted a settlement negotiation privilege and this Court agrees with the Federal Circuit's analysis of the issue in *In re MSTG, Inc.*

But this does not mean that Emerson is entitled to the settlement-related negotiations it seeks. In *In re MSTG, Inc.*, it was due to the patent owner's expert's reliance on facts related to the settlement negotiations that were not contained in the final agreements, that the district court found that the negotiations were relevant to a full evaluation of the expert's opinion. The district court ordered production of the negotiations "because they might contain information showing that

In general, the Federal Rules promote a "broad and liberal policy of discovery for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *In re MSTG, Inc.*, 675 F.3d at 1346. However, Rule 26(b)(2)(C) provides that courts are required to "limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

The Court here concludes that Emerson's reliance on *In re MSTG, Inc.* is misplaced. Indeed, as noted above, the Federal Circuit in that case held that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege. The Federal Circuit noted that although in Federal Rule of Evidence 408, Congress limited the admissibility of evidence related to compromise offers and settlement negotiations, it "did not take the additional step of protecting settlement negotiations from discovery." *In re MSTG, Inc.*, 675 F.3d at 1344. Statements made during settlement negotiations may be admissible for purposes other than the prohibited uses under Rule 408(a) of impeachment or to prove or disprove the validity or amount of a disputed claim. The Eighth Circuit has not adopted a settlement negotiation privilege and this Court agrees with the Federal Circuit's analysis of the issue in *In re MSTG, Inc.*

But this does not mean that Emerson is entitled to the settlement-related negotiations it seeks. In *In re MSTG, Inc.*, it was due to the patent owner's expert's reliance on facts related to the settlement negotiations that were not contained in the final agreements, that the district court found that the negotiations were relevant to a full evaluation of the expert's opinion. The district court ordered production of the negotiations "because they might contain information showing that

the grounds [the expert] relied on to reach his conclusion are erroneous" and to permit the alleged infringer "the ability to test the accuracy of [the expert's] opinions and assumption." *Id*. 675 F.3d at 1348. And it was on this narrow basis that the Federal Circuit held on mandamus review that the district court did not clearly abuse its discretion. *Id*.

The Federal Circuit noted that many district courts have imposed heightened standards for discovery of confidential settlement discussions, *id*. at 1347. At least one court in this district has recognized such a standard. *See Auto-Owners Ins. Co. v. Mid-Am. Piping, Inc*., No. 4:07CV00394 DJS, 2008 WL 2570820, at *2 (E.D. Mo. June 26, 2008) ("When the requested discovery concerns a confidential settlement agreement, the majority of courts considering the issue have required the requesting party to meet a heightened standard, in deference to Federal Rule of Evidence 408, and the public policy to encourage settlements and to uphold confidentiality provisions.") (citation omitted). In sum, this court "has discretion to limit discovery of material that is not itself admissible and that was not utilized by the opposing party" in order to protect settlement confidentiality. *In re MSTG, Inc*., 675 F.3d at 1346-47.

Here, Emerson has not posited any particularized relevance to the information it seeks, other than possible relevance to the issue of prior art that figures in the case. The Court will require ABT to disclose any documents related to the settlements with the former Defendants that relate to relevant prior art. Such documents may be produced subject to a proper protective order, if required. The Court concludes, however, outside this exception, a limitation on discovery is appropriate here at this point. *Cf. Avocent Redmond Corp. v. Rose Elecs*., No. C06-1711RSL, 2012 WL 4903272, at *2 (W.D. Wash. May 29, 2012) (denying motion to compel production of settlement negotiations in a patent case where the moving defendant did not show that statements made during discovery would be admissible). The agreements, themselves, having been produced,

Emerson has not demonstrated why the negotiations underlying the settlement are pertinent to the issue of damages. Should it become apparent that ABT's experts make use of statements made during the settlement negotiations to form their opinions, Emerson remains free to seek further discovery of the settlement negotiations.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Emerson's motion to compel is **DENIED** in large part, and **GRANTED** in part to the extent set forth above. (Doc. No. 249).

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 18th day of December, 2012.