UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ABT SYSTEMS, LLC, and THE )
UNIVERSITY OF CENTRAL FLORIDA )
BOARD OF TRUSTEES, )
 )
    Plaintiffs / Counterclaim Defendants, )
 )
       vs. ) Case No. 4:11CV00374 AGF
 )
EMERSON ELECTRIC CO., )
 )
    Defendant / Counterclaim Plaintiff. )

## MEMORANDUM AND ORDER

    This patent infringement action was filed on November 9, 2009. Following an eight-day jury trial conducted from February 11 - 21, 2013, the jury returned its verdict finding that Defendant Emerson Electric Co. had infringed certain claims of the two patents at issue ("the '017 patent" and "the '268 patent," referred to herein jointly as the "Rudd Patents," after their inventor Armin Rudd), owned by Plaintiffs, related to electronic thermostats for cooling and heating systems. The jury awarded Plaintiffs $311,379 in damages. Now before the Court is Defendant's motion (Doc. No. 458) for judgment as a matter of law ("JMOL"). Defendant argues that Plaintiffs failed to provide sufficient evidence to give a reasonable jury a basis to find in Plaintiffs' favor on their claims for inducement, willful infringement, and damages. For the reasons set forth below, this motion shall be denied.

## BACKGROUND

The patents at issue generally claim a "fan recycling control" that when incorporated into a thermostat that is installed in a building or home, operates as part of an air conditioning system to periodically activate and deactivate the fan of the system at preselected intervals after the end of the call for heating or cooling. The accused products are eight models of Emerson thermostats that have a "Comfort Circulating Fan" ("CFF") feature. It was this feature that Plaintiffs asserted infringed on the Rudd Patents.

Emerson's defenses at trial included that the accused products' fan activation feature did not use Plaintiffs' patents, but rather the prior art technology of another patent, the "Vogelzang" patent, that issued in 1989; that a combination of prior art patents, including Vogelzang and other patents, one from 1935, one from 1960, and one from 1991, rendered the Rudd Patents obvious, and therefore, invalid; and that Plaintiffs lacked evidence that the accused feature in Defendant's thermostats was ever used by anyone.

Plaintiff presented evidence that in 1995 and 1996, Rudd discussed his invention with Emerson employees including Senior Product Manager John Sartain and chief engineer Carl Mueller; and in September 1996, mailed a copy of his newly-obtained '017 patent to Sartain. Mueller testified that in 2005 - 2006, Emerson decided to develop a thermostat to compete with the Honeywell Vision PRO, a new thermostat with a touchscreen, as well as a fan recycle feature for which Honeywell eventually obtained a license to use the Rudd Patents. Mueller contacted Defendant's patent attorneys and talked with them about the Vogelzang patent. He was told that because the Vogelzang

patent had been abandoned, the technology was available for use. Defendant decided to go ahead with its new thermostats.

By agreement of the parties, the jury was instructed that it was to consider damages from November 5, 2009, the date the lawsuit was filed, until April 30, 2011, and that Defendant sold a total of 138,391 accused thermostats during that period. The April 30, 2011 end date for damages was agreed to by Plaintiffs, and was based on the only disclosures they had made in their trial materials and expert reports. It is undisputed that the accused products have been installed in homes and buildings during the relevant time period in this case.

Defendant presented evidence that the accused thermostats permit a user to set the air conditioning system fan to operate in different ways, including AUTO, ON, PROG, and FAN PROG (or FAN CIRC depending on the model). AUTO runs the fan only when the cooling or heating system is on; ON runs the fan continuously; PROG allows users to program times during the day when the fan will run continuously; and FAN PROG corresponds to the CFF feature, and like PROG, must be programmed in order to operate.

Witnesses for Defendant testified at trial that they did not remember discussing the Rudd Patents with Rudd and that they did not know about them at the time the accused products were designed in 2005 and introduced into the market in 2006. Defendant maintained that it first became aware of the Rudd Patents on the day this lawsuit was filed.

The jury was instructed that if it found that Defendant infringed at least one claim of the '017 patent, then it also had to determine if this infringement was willful. The jury was given guidance on the standard for willfulness and was asked to answer a special

interrogatory on the matter. The jury found that Defendant had induced infringement of the Rudd Patents and that the reasonable royalty rate for the sales of the infringing products was $2.25 per unit, for a total of $311,379 ($2.25 x 138,391), as the amount that would reasonably compensate Plaintiffs for the infringement. The jury answered the special interrogatory on willfulness in the affirmative. (Doc. No. 466 at 3.)

Defendant argues that it is entitled to judgment as a matter of law because Plaintiffs failed to provide sufficient evidence to establish the underlying direct infringement required to support their induced infringement claim, namely, Plaintiffs did not identify a single person who had used the CFF feature of any of the 138,391 infringing thermostats during the relevant time period. Defendant also argues that Plaintiffs failed to prove that Defendant had the specific intent to induce infringement, and that no reasonable jury could conclude that the asserted claims of the '017 patent were not obvious, and thus, as a matter of law, these claims must be declared invalid. Defendant argues that the undisputed facts of record show that the Rudd Patent claims are an obvious variation of the prior art, and so the Court should enter judgment as a matter of law that the Rudd Patents are invalid.

With respect to the jury's finding on willfulness, Defendant maintains that the evidence in the record is undisputed that Defendant acted in good faith, precluding Plaintiffs' willfulness claim. Defendant points to Mueller's testimony that he believed the accused products practiced Vogelzang, and argues that this belief was reasonable, even assuming it was not correct, in light of the opinion given by Defendant's patent attorneys and also in light of the evidence that the Rudd Patents were invalid due to obviousness.

Emerson next argues that it is entitled to a judgment of no damages as a matter of law, because even if a reasonable juror could infer that at least one person directly infringed the Rudd Patents between November 5, 2009, and April 30, 2011, there was no basis in the record for the jury to determine how many accused thermostats were actually used in an infringing manner; and because Plaintiffs' damages expert's opinions as to a proper royalty rate were unreliable.

## DISCUSSION

Motions for JMOL in patent cases are governed by the standard applied by the regional circuit. *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1309 (Fed. Cir. 2009). A grant of a JMOL motion is appropriate if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Fed. R. Civ. P. 50(a). In considering a motion for JMOL, the Eighth Circuit has instructed that a court must draw "all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence." *Penford Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 662 F.3d 497, 503 (8th Cir. 2011) (citation omitted). "To sustain an entry of judgment as a matter of law, '[t]he evidence must point unswervingly to only one reasonable conclusion. This demanding standard reflects our concern that, if misused, judgment as a matter of law can invade the jury's rightful province.'" *Id*.

Here, the Court first concludes that there was sufficient evidence for the jury to find the underlying direct infringement – use of the CFF mode on the accused products – to support Plaintiffs' claim of induced infringement. A jury could have reasonably found

5

that Defendant sold the infringing products with the intent that they be installed and used in an infringing manner, and that the products were in fact installed and ready for such use. From this the jury could have reasonably concluded that consumers used the thermostats in question in an infringing manner. *See Shumaker v. Gem Mfg. Co*., 311 F.2d 273, 276 (7th Cir. 1962) (holding that the defendant, who was accused of infringing claims of a patent for a pair of wind deflectors attached to rear corner posts of station wagon to break up vacuum formed during forward movement of vehicle, was liable for inducing others to infringe the patents by selling others the defendant's deflectors with intent that the deflectors be installed in rear corner posts of station wagon in an infringing manner). The Court also rejects Defendant's argument that the record evidence establishes as a matter of law that Defendant did not intend to induce infringement. This was a matter for the jury, and there was sufficient evidence to support its verdict.

With respect to invalidity as a matter of law, upon consideration of the evidence concerning the scope and content of the prior art; the differences between the prior art and the claimed invention; the level of ordinary skill in the field of the invention; and objective evidence of nonobviousness such as copying, long felt but unsolved need, failure of others, and commercial success, the Court cannot say as a matter of law that the claimed invention is not "more than the predictable use of prior art elements according to their established functions." *See C.W. Zumbiel Co. v. Kappos*, 702 F.3d 1371 (Fed. Cir. 2012); *see also Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc*., 711 F.3d 1348, 1368 (Fed. Cir. 2013). The jury could have reasonably found, based upon the evidence, that the prior art relied upon by Defendant did not disclose "periodic" fan operation that was

dependent upon the deactivation of the heating or cooling function of the system, and further that was adaptable to modern air conditioning systems. The jury could have also found from the evidence that there was a long-felt need for a periodic fan recycle control as disclosed in the Rudd Patents. In sum, Defendant has not met its burden of proving invalidity by clear and convincing evidence. *See St. Jude Med., Inc. v. Access Closure, Inc.*, ___ F. 3d ___, 2013 WL 4826148, at *10 (Fed. Cir. Sept. 11, 2013) (affirming the district court's denial of the defendant's motion for JMOL on the issue of patent invalidity due to obviousness where the defendant did not meet clear and convincing standard). Thus Defendant's request for JMOL on the question of invalidity due to obviousness shall be denied.

The question of whether the evidence supports a finding that the infringement was willful, allowing an award of enhanced damages under 35 U.S.C. § 284, has been briefed separately by the parties and will be addressed by the Court in a separate Memorandum and Order. This question has a subjective standard as well as an objective standard, *see Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005-06 (Fed. Cir. 2012), and will be considered accordingly, giving due regard to the jury's findings on the matter.

Lastly, with respect to damages, the testimony by Plaintiffs' damages expert, who conducted a hypothetical negotiation analysis using the factors in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), was sufficient to support the royalty rate found by the jury to be reasonable. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1267 (Fed. Cir. 2013) (affirming denial of post-trial motion for JMOL

as to infringement damages where jury award was supported by such an expert report).
As noted above, the number of infringing products to which the reasonable royalty rate was to be applied was stipulated to by the parties.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for judgment as a matter of law is **DENIED**.[1] (Doc. No. 458.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2013.

---

1  Besides the issue of willfulness, still to be determined by the Court before final judgment can be entered is whether there was inequitable conduct on Plaintiffs' part due to the nondisclosure of prior art, thereby rendering the Rudd patents unenforceable.