UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ABT SYSTEMS, LLC, and THE UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES, | ) ) ) ) ) | |
| Plaintiffs / Counterclaim Defendants, | ) ) | |
| vs. | ) ) | Case No. 4:11CV00374 AGF |
| EMERSON ELECTRIC CO., | ) ) | |
| Defendant / Counterclaim Plaintiff. | ) | |

## MEMORANDUM AND ORDER

This patent infringement action was filed on November 5, 2009. Following an eight-day jury trial conducted from February 11 to 21, 2013, the jury returned its verdict finding that Defendant Emerson Electric Co. had infringed certain claims of "the '017 patent," owned by Plaintiffs, and awarding Plaintiffs $311,379 in damages. The patent at issue claims an air conditioning control (the "fan recycling control"), invented by Armin Rudd, which, when incorporated into a thermostat that is installed in a building or home, operates as part of an air conditioning system to periodically activate and deactivate the fan of the system at preselected intervals after the end of the call for heating or cooling.

The suit initially involved another patent for a fan recycling control invented by Rudd, "the '268 patent." One of Defendant's counterclaims sought a declaratory judgment that the '268 patent was unenforceable because, during the patenting process, Rudd withheld information from the United States Patent and Trademark Office ("PTO")

regarding the scope and content of prior art.  On February 9, 2013, two days before trial, Plaintiffs executed a Covenant Not to Sue Defendant for any infringement and/or damages related to the '268 patent.  An evidentiary hearing was held on February 21, 2013, before the Court only, on Defendant's allegation of inequitable conduct.

Now before the Court are two post-trial motions: (1) Defendant's motion (Doc. No. 492) for a finding that Plaintiffs engaged in inequitable conduct during the prosecution of the '268 patent by misrepresenting the scope of prior art, and during this lawsuit by pursuing the claim of infringement of that patent, entitling Defendant, under 35 U.S.C. § 285, to attorney's fees it incurred related to that claim; and (2) Plaintiffs' motion (Doc. No. 500) for a determination that Defendant's infringement of the '017 patent prior to the filing date of this lawsuit was willful, thereby entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284.

For the reasons set forth below, the Court finds that Defendant is not entitled to attorney's fees incurred in defending the claim of infringement of the '268 patent, and that Defendant cannot be found to have been a willful infringer of the '017 patent during the period prior to the filing of this action.

## BACKGROUND

The accused products are eight models of Emerson thermostats that have a "Comfort Circulating Fan Feature."  On the first day of trial, the Court granted Defendant's motion in limine to exclude Plaintiffs' evidence that Plaintiffs had engaged in "marking" its products that incorporated the '017 patent and had thereby provided Defendant with constructive notice of the patent prior to the date this action was filed.

2

Other than the alleged "marking," Plaintiffs provided no notice of their infringement claims to Defendant prior to filing suit.

Defendant's defenses at trial included that the accused products' fan activation feature did not use the '017 patent, but rather the prior art technology of another patent, the "Vogelzang" patent; that a combination of prior art patents, including Vogelzang, rendered the '017 patent obvious, and therefore, invalid; and that Plaintiffs lacked evidence that the accused feature in Defendant's thermostats was ever used in an infringing manner by anyone.

The record shows that the application for the '017 patent was filed on January 5, 1995. There is evidence in the record, though not conclusive evidence, that in July 1995, Honeywell, Inc., a competitor of Defendant's, introduced nationwide the Honeywell PC8900 thermostat, a thermostat that caused the fan to run periodically, beginning a set period of time after the end of the call for heating or cooling. The '017 patent issued on August 20, 1996. Later that year, Rudd sent Defendant a copy of the patent. In April 1997, Rudd tested the Honeywell PC8900 because, based upon the PC8900 Product Data and Owner's Guide (both dated 1995), he thought it might infringe the '017 patent. Based on his tests, he determined that it did infringe the '017 patent, and he informed Honeywell of such on July 22, 1997.

On March 15, 1999, Rudd filed the application that became the '268 patent, claiming priority to a patent application filed on August 18, 1997. He submitted the Product Data, Owner's Guide, and Product Brochure related to the PC8900 to the PTO, but did not file the test results he had obtained in April 1997. In the application, Rudd

3

represented, as was then required by the PTO, that he did not know or believe that his invention was in public use or on sale in the United States more than one year prior to the application.[1] On August 13, 2002, the '268 patent issued. On November 20, 2002, Rudd sued Honeywell for infringement of the '017 patent. This suit was settled on March 12, 2003, pursuant to which Honeywell took a license under the '017 patent and an option for a license under the '268 patent. (Doc. No. 313-1.)

Evidence was presented at trial that in 2005, Defendant decided to develop a thermostat to compete with the 2004 Honeywell VisionPRO, a thermostat with a touchscreen, as well as many other features, including a fan recycle feature. Defendant believed that the fan recycle feature of the VisionPRO used the Vogelzang patent and upon inquiry, was told by a member of its legal department (who became a lawyer two years later) that because the Vogelzang patent had been abandoned, the technology was available for use. Defendant decided to go ahead with its new thermostats, including the accused products.

At the February 21, 2013 hearing on the claim of Plaintiffs' inequitable conduct, Rudd testified that the literature about the Honeywell PC8900 thermostat that he submitted to the PTO in connection with the '238 patent application clearly indicated to anyone skilled in the art, including patent examiners, that the PC8900's fan began to cycle at a predetermined time after the end of the heating or cooling cycle, as did his claimed invention.

---

1 See 37 C.F.R. § 1.63 (1996). The PTO does not currently require inventors to file a statement regarding such knowledge or belief.

## The Jury's Findings on Royalty Rate and Willfulness

By agreement of the parties, the jury was instructed that November 5, 2009, the date the lawsuit was filed, was the date for the start of damages and that Defendant sold a total of 138,391 accused thermostats from that date until April 30, 2011. This end date for damages was agreed to by Plaintiffs and was based on the only disclosures they had made in their trial materials and expert reports.

The jury was instructed as follows on the question of willfulness:

If you find that it is more likely than not that Emerson infringed at least one claim of the '017 patent, then you must also determine if this infringement was willful. Willfulness means that it is highly probable that:

1. Emerson was aware of the '017 patent,

2. Emerson acted despite an objectively high likelihood that its actions infringed a valid patent, and

3. This objectively high likelihood of infringement was either known or so obvious that it should have been known to Emerson.

In making the determination of whether Emerson acted despite an objectively high likelihood that its actions infringed a valid patent, you may not consider Emerson's actual state of mind.

In determining willfulness, you must consider the totality of the circumstances. The totality of the circumstances includes a number of factors, such as but not limited to, whether Emerson intentionally copied the claimed invention, whether Emerson received notice of or a copy of the '017 patent from Mr. Rudd, whether Emerson relied on competent legal advice, and whether Emerson presented a substantial defense to infringement, including the defense that the patent is invalid.

In assessing when Emerson had knowledge of the '017 patent, you are instructed that proper mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.

> In considering the totality of the circumstances with regard to whether or not Emerson acted willfully, you should separately consider whether willfulness existed prior to the lawsuit, and whether willfulness existed after the lawsuit filing date. As to the pre-lawsuit filing time, the things you may consider include but are not limited to whether the verbal opinion that Emerson obtained from its legal counsel regarding the Vogelzang patent was competent, and whether Emerson had a good faith belief that it was using the Vogelzang technology. As to the post lawsuit filing time, in addition to the issues you may consider for the pre-lawsuit filing time, the things you may consider include but are not limited to whether Emerson had a good faith belief that the '017 patent was invalid because of the prior art, including the Vogelzang patent, in your determination of the totality of circumstances.

(Doc. No. 464 at 35-36, Instruction No. 28.)

The jury was also asked to answer the following special interrogatory:

> Do you find that [Plaintiffs] have proven by a preponderance of the evidence that as of the Fall of 2006:
>
> (a) Emerson knew of the '017 patent, or showed willful blindness to its existence; *and*
>
> (b) Emerson knew, or should have known, that its actions would result in infringement of at least one claim of the '017 patent? You are instructed that to find willful blindness: (1) Emerson must have subjectively believed that there was a high probability that a patent existed covering the accused thermostats; and (2) Emerson must have taken deliberate actions to avoid learning of that patent.

(Doc. No. 466 at 3.)

The jury found that the reasonable royalty rate for the infringing sales was $2.25 per unit, for a total of $311,379 ($2.25 x 138,391), as the amount that would reasonably compensate Plaintiffs for the infringement the jury found. With respect to the issue of willful infringement, the jury found that Plaintiff did prove willful infringement from the Fall of 2006 to the November 5, 2009 filing date of the lawsuit, but did not prove willful

6

infringement from the filing date of the lawsuit until the alleged end of sales of the accused products in October 2012. *Id*. at 6-7.

## DISCUSSION

**Inequitable Conduct**

According to Defendant, it is the prevailing party with respect to the claim that it infringed the '268 patent, and thus the Court may award its attorney's fees related to that claim, under 35 U.S.C. § 285, which provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." Defendant argues that Rudd's failure to submit his test results with respect to the Honeywell PC8900 in prosecuting his application for the '268 patent and representing on the '268 patent application that his invention was not in public use, as well as Plaintiffs' pursuit of this litigation with respect to the '268 patent, render this an exceptional case under § 285.

Defendant asserts that the Covenant Not to Sue on the '268 patent, and the resultant dismissal of Plaintiffs' infringement claims and Defendant's corresponding counterclaims for invalidity with respect to that patent, do not deprive the Court of jurisdiction to consider Defendant's motion for a finding of inequitable conduct warranting the award of fees to Defendant.

The Court agrees that it has jurisdiction to resolve Defendant's motion. *See, e.g., Highway Equip. Co. v. FECO, Ltd.*, No. C03-0076, 2005 WL 936469, at *4-5 (N.D. Iowa Apr. 22, 2005) (citing cases). The Court, however, concludes that this is not an "exceptional" case warranting the award of fees associated with defending the claim that Defendant infringed the '268 patent.

7

"A determination of whether to award attorneys' fees under § 285 involves a two-step process. First, a district court must determine whether the prevailing party has proved by clear and convincing evidence that the case is 'exceptional.'" *Kilopass Tech., Inc. v. Sidense Corp*., 738 F.3d 1302, 1308 (Fed. Cir. 2013). A case may be deemed exceptional when there has been "some material inappropriate conduct related to the matter in litigation," such as "fraud or inequitable conduct in procuring the patent" or "vexatious or unjustified litigation." *Id*. (citations omitted). Absent misconduct in the litigation or in securing the patent, fees may be imposed against the patentee "only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id*. at 1309. (citing *Brooks Furniture Mfg. v. Dutailier Int'l, Inc*., 393 F.3d 1378, 1381 (Fed. Cir. 2005).

To establish inequitable conduct based on misrepresentation of the prior art to the PTO, absent affirmative egregious misconduct such as the manufacture of false evidence, a defendant must prove by clear and convincing evidence that "the patentee acted with the specific intent to deceive the PTO," and by a preponderance of the evidence that the misrepresentation was but-for material, that is, but for the misrepresentation the patent would not have issued. *Therasense v. Becton, Dickinson & Co*., 649 F.3d 1276, 1290-92 (Fed. Cir. 2011) (en banc).

"Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id*. at 1290. "Although deceptive intent may be inferred from circumstantial evidence, the inference must not only be based on sufficient evidence and be reasonable in

8

light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 520 (Fed. Cir. 2012) (citation omitted). Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence. *Therasense*, 649 F.3d at 1291.

Here, the Court first concludes that there is insufficient evidence of a deceptive intent on Rudd's part in not providing the PTO with his Honeywell PC8900 test results, especially in light of the fact that he did provide the literature from Honeywell about the PC8900. *See 1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375-76 (Fed. Cir. 2012) (holding that the district court clearly erred in finding inequitable conduct in the prosecution of a patent application in relying on evidence showing, at best, that the inventor and his lawyer knew that nondisclosed prior art was material, and the inability of the inventor and his lawyer to offer a good faith explanation for the nondisclosure, as a basis to infer a deliberate decision to withhold prior art reference.) Nor have Defendants shown by a preponderance of the evidence that had the test results been provided, the '268 Patent would not have been granted.

Similarly, there is not clear and convincing evidence that Rudd's '268 application statement that he did not know or believe that his invention was in public use or on sale in the United States more than one year prior to the application was made with the intent to deceive the PTO with respect to the scope of the prior art.

When a defendant seeks fee shifting under § 285 based on the allegation that the plaintiff's claims of infringement were baseless, "actual knowledge of baselessness is not required. Like a plaintiff seeking to recover attorneys' fees under § 285 based on alleged willful infringement, a defendant need only prove reckless conduct to satisfy the subjective component of the § 285 analysis." *Kilopass Tech., Inc.,* 738 F.3d at 1310. "To be objectively baseless, the patentee's assertions — whether manifested in its infringement allegations or its claim construction positions — must be such that no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) (citation omitted).

The Court finds that Plaintiffs were not reckless in pursuing the '268 patent infringement claim in this case until they dropped that claim on February 9, 2013. The Court cannot say that the objective merits of the claim were unreasonable in that Plaintiffs knew that the '268 patent was invalid, as Defendant posits. *See Kilopass Tech., Inc.*, 738 F.3d at 1310-11 (explaining that in this context, a court should consider the objective merits of the claim). In sum, Defendant's request for an award of fees under 35 U.S.C. § 285 shall be denied.

The Court notes that it would reach the same decision under the less stringent preponderance-of-the-evidence and "equitable discretion" standards for finding an "exceptional case" urged by the petitioners for a writ of certiorari in *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 496 F. App'x 57 (Fed. Cir. 2012), *cert. granted*, 134 S. Ct. 49 (2013). Here, although Defendant is technically the prevailing party with respect to Plaintiffs' claims of infringement of the '268 patent, Defendant did not actually prove

10

noninfringement and Plaintiffs' claims of infringement were not unreasonably weak. Nor is there evidence that Plaintiffs acted in bad faith in bringing the '268 infringement claims.

**Willfulness**

Plaintiffs seek a determination by the Court that Defendant's infringement of the '017 patent during the period prior to the filing of this lawsuit was willful.[2] Under 35 U.S.C. § 284, such a determination would authorize the Court to award Plaintiffs up to three times the amount of royalty damages. Plaintiffs argue that the record establishes pre-lawsuit willfulness from the fall of 2006.

Defendant argues that there was no willful infringement of the '017 patent because Defendant's defenses of obviousness and non-infringement were reasonable, and it had a reasonable belief that it was practicing an abandoned prior art patent (the Vogelzang patent). Defendant also argues that the Court should not find willfulness because Plaintiffs did not file a motion for a finding on the objective prong of willful infringement prior to the submission to the jury of the subjective prong. Defendant argues that, in any event, Plaintiffs cannot recover enhanced damages for pre-lawsuit conduct, as the jury was only asked to consider, and only awarded, damages for post-lawsuit conduct.

In response to Defendant's argument that it cannot be a willful infringer where it was not found to infringe, Plaintiffs state as follows:

> The jury found that Emerson willfully infringed starting in 2006. Emerson provide [sic] significant evidence of pre-suit sales, and it was only because of the Court's ruling on the patent marking issue that the jury was not permitted

---

2   Plaintiffs specifically limit their motion for a finding of willfulness to the pre-lawsuit period.

11

> to consider any damages prior to the filing of the suit. Emerson cannot
> plausibly argue that the jury's findings would not extend to pre-lawsuit sales.

(Doc. No. 505 at 7.)

The Court rejects Defendant's procedural argument that submitting the question of willfulness to the jury first, somehow precludes the Court from now making a willfulness determination at this time. The Court, however, agrees with Defendant that enhanced damages for pre-lawsuit willfulness would not be appropriate in this case, as Plaintiffs were not awarded any damages, and there was no finding that there were infringing sales, for that period of time. Plaintiffs have not cited any cases, nor has the Court found any, permitting enhanced damages under § 284 where no damages were awarded. The Court is not in a position to make findings of pre-lawsuit infringement, and to determine the number of pre-lawsuit infringing sales, if any, both of which findings would be necessary to award enhanced damages for the pre-lawsuit period.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for a finding that Plaintiffs engaged in inequitable conduct rendering this an "exceptional" case under 35 U.S.C. § 285, is **DENIED**. (Doc. No. 492.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion for a determination that Defendant's pre-lawsuit infringement was willful under 35 U.S.C. § 284 is **DENIED**. (Doc. No. 500.)

All claims and issues having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 13th day of February, 2014.