UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ABT SYSTEMS, LLC, and THE UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES, <br><br> Plaintiffs / Counterclaim Defendants, <br><br> vs. <br><br> EMERSON ELECTRIC CO., <br><br> Defendant / Counterclaim Plaintiff. | Case No. 4:11CV00374 AGF |

## MEMORANDUM AND ORDER

This patent infringement action is before the Court on the renewed motion (Doc. No. 530) of Defendant Emerson Electric Co. ("Emerson") for judgment as a matter of law ("JMOL"), or in the alternative, for a new trial on the issue of obviousness. For the reasons set forth below, this motion shall be denied in its entirety.

## BACKGROUND

The action was filed on November 5, 2009, by Plaintiffs, the owner of the patent at issue, "the '017 Patent." In the second amended complaint, Plaintiffs claimed that by selling certain of its thermostats, Emerson committed "direct and/or contributory infringement, and/or induce[d] infringement, of the '017 Patent pursuant to 35 U.S.C. §§ 271(a)-(c)." The '017 Patent is for an "Air Distribution Fan Recycling Control" and generally discloses a "system for controlling the operation of the circulating fan of a closed central air conditioning (CAC) system." When the control is incorporated into a

thermostat that is installed in a building or home as part of a CAC system, the control can be used to periodically activate and deactivate the fan of the system at preselected intervals after the end of the call for cooling or heating. The accused products are eight models of Emerson thermostats that have a "Comfort Circulating Fan" ("CCF") feature. It was this feature that Plaintiffs asserted infringed the '017 Patent.

The eight-day trial commenced on February 11, 2013. Emerson's defenses at trial included that a combination of prior patents, one from one from 1989, one from 1935, one from 1960, and one from 1991, rendered the '017 Patent obvious, and therefore, invalid. Evidence was presented that the accused thermostats permit a user to set the air conditioning system fan to operate in different ways, including AUTO, ON, PROG, and FAN PROG (or FAN CIRC depending on the model). AUTO runs the fan only when the cooling or heating system is on; ON runs the fan continuously; PROG allows users to program times during the day when the fan will run continuously; and FAN PROG corresponds to the CCF feature. Emerson's installation manuals for the accused thermostats instruct the user how to program, on the thermostat's touch screen, the factory-enabled CCF feature "to improve indoor air quality."

The parties stipulated that the relevant time period in this case was from November 5, 2009, to April 30, 2011, and that during this time, Emerson sold 138,391 accused thermostats. It was undisputed that these thermostats were installed in homes or other buildings with a CAC system. At the close of the evidence, Emerson filed a motion for JMOL (Doc. No. 458), arguing that Plaintiffs had failed to provide sufficient evidence to give a reasonable jury a basis to find in Plaintiffs' favor on their claims for induced

2

infringement, willfulness on Emerson's part, and damages; and against Emerson on its counterclaim that the '017 Patent was obvious and thus invalid.

By agreement of the parties, the case was submitted to the jury on an induced-infringement theory, with the jury instructed that it would have to decide four main issues: whether Plaintiffs proved that Emerson induced infringement of the '017 Patent; whether Emerson proved that the Patent was invalid; what damages if any Plaintiffs proved; and whether Plaintiffs proved that Emerson's alleged infringement was willful. (Doc. 464 at 7.) On the issue of infringement, the jury was instructed as follows: "Because system claims are involved here, which are not infringed until the accused thermostats are used, downstream, in an air conditioning system, only indirect infringement, not direct infringement, is involved here. Indirect infringement results if Emerson induces another to infringe the '017 patent, as will be explained further." *Id.* at 10. The next instruction more fully explained the elements of induced infringement, and the following instruction told the jury: "You are instructed that Emerson's accused thermostats, when installed and operating pursuant to Emerson's instructions, directly infringe each of the asserted claims. To find that Emerson has infringed, you must still determine whether Emerson has induced infringement, as I just mentioned." *Id.* at 13.

The jury returned its verdict the same day, finding that from November 5, 2009, to April 30, 2011, Emerson had infringed certain claims of the '017 Patent, and that Plaintiffs were entitled to a royalty rate of $2.25 per infringing thermostat, for a damages of $311,379 ($2.25 x 138,391). By special interrogatory, the jury also found that after November 5, 2009, Emerson's infringement was not willful.

By Memorandum and Order dated October 9, 2013 (Doc. No. 514), the Court denied Emerson's motion for JMOL. On February 13, 2014, after resolving several post-verdict motions, including denying Plaintiffs' motion for a finding of willful infringement prior to November 5, 2009 based on the fact that no infringement had been found and no damages had been awarded for that period, the Court entered Judgment in Plaintiffs' favor in accordance with the jury's verdict. Now before the Court is Emerson's renewed motion (Doc. No. 530) for JMOL, or in the alternative, for a new trial on the issue of obviousness.

In support of its present motion, Emerson essentially reasserts the arguments it raised in support of its initial motion for JMOL, with some expansion of the arguments on the issue of obviousness. Emerson argues that it entitled to JMOL because (1) Plaintiffs failed to provide sufficient evidence to establish the underlying direct infringement required to support their induced infringement claim, by failing to identify a single person or entity who had used the CFF feature of any of the 138,391 infringing thermostats during the relevant time period; (2) Plaintiffs failed to prove that Emerson had the specific intent to induce infringement; (3) Plaintiffs failed to prove damages by not demonstrating the number of infringing thermostats, if any, that had been used in an infringing manner; and (4) the claims of the '017 Patent are obvious as a matter of law, and thus invalid. Emerson argues that in the alternative, the Court should grant a new trial on the issue of obviousness because the verdict is against the weight of the evidence on this issue, and the court improperly failed to instruct the jury that the standard for obviousness changed in 2007.

4

## DISCUSSION

Federal Rule of Civil Procedure 50(b) states that, when ruling on a renewed motion for JMOL, "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." In patent cases, a motion for JMOL pursuant to Rule 50(b) is reviewed under the law of the regional circuit. *Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, No. 2012–1575, 2014 WL 1387144, at *12 (Fed. Cir. April 10, 2014). Under Eighth Circuit law, "[i]n the matter of a renewed JMOL, a court must affirm the jury's verdict unless, in viewing the evidence in the light most favorable to the prevailing party, the court concludes that a reasonable jury could not have found for that party." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (citation omitted). "Additionally, the court considers all evidence in the record without weighing credibility, and makes reasonable inferences and resolves conflicts in favor of the non-moving party." *Id*.

Upon review of Emerson's arguments, as well as of patent infringement decisions issued by the United States Supreme Court and the Federal Circuit after this Court ruled on Emerson's initial motion for JMOL, the Court concludes that the renewed motion for JMOL must be denied for the same reasons the Court denied the initial motions for JMOL. On the question of whether there was sufficient evidence for the jury to find the underlying direct infringement – the Supreme Court, in *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111 (2014), reaffirmed the general proposition that "liability for inducement must be predicated on direct infringement. . . . [I]nducement liability may arise if, but only if, there is direct infringement." *Id*. at 2117 (citation

5

omitted).  But neither this case, nor any other recent case, undermines this Court's determination, as set forth in the Memorandum and Order of October 9, 2013, that here the jury could have reasonably found that at least one consumer used an Emerson thermostat in an infringing manner.  *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364-65 (Fed. Cir. 2012) (holding that there was sufficient circumstantial evidence for a jury to find induced infringement without direct evidence of direct infringement by anyone during the relevant time); *Shumaker v. Gem Mfg. Co.*, 311 F.2d 273, 276 (7th Cir. 1962) (holding that the defendant, who was accused of infringing claims of a patent for a pair of wind deflectors attached to rear corner posts of station wagon to break up vacuum formed during forward movement of vehicle, was liable for inducing others to infringe the patents by selling others the defendant's deflectors with intent that the deflectors be installed in rear corner posts of station wagon in an infringing manner).

The Court concludes that a close question is presented on this matter, but that ultimately, Emerson's position fails, and the cases it relies upon on this point are inapposite.  For example, in *ACCO Brands, Inc. v. ABA Locks Manufacturers Co.*, 501 F.3d 1307 (Fed. Cir. 2007), the Federal Circuit held that because the evidence at trial showed that the accused device – a locking system for computers – could be used in a noninfringing manner, the lack of a witness who testified to having used the accused device in an infringing matter defeated the plaintiff's induced infringement claim.  *Id.* at 1313.  But in that case, unlike here, the evidence showed that the defendant did not provide instructions describing the infringing method, a fact relied upon by the Federal Circuit. Here, as noted above, Emerson provided instructions on how to use the CFF mode, and

there was no way to use that feature in a noninfringing manner. *See Toshiba Corp.,* 681 F.3d at 1364-65 (distinguishing *ACCO Brands, Inc.* on this ground). Further, Plaintiffs presented circumstantial evidence of actual infringing use.

The Court also rejects Emerson's other reasserted arguments for the reasons articulated by the Court in the October 9, 2013 Memorandum and Order.[1]

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's renewed motion for judgment as a matter of law is **DENIED**. (Doc. No. 530.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2014.

---

1  Recent cases reviewed by the Court do not lead the Court to believe that any of these prior rulings were in error.