UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ABT SYSTEMS, LLC, and THE            )
UNIVERSITY OF CENTRAL FLORIDA        )
BOARD OF TRUSTEES,                   )
                                     )
                                     )
        Plaintiffs / Counterclaim Defendants,  )
                                     )
            vs.                      )         Case No. 4:11CV00374 AGF
                                     )
EMERSON ELECTRIC CO.,                )
                                     )
        Defendant / Counterclaim Plaintiff.    )

## <u>MEMORANDUM AND ORDER</u>

This patent infringement case is before the Court on Defendant Emerson Electric
Co.'s ("Emerson") Bill of Costs, following remand of the case by the Federal Circuit
Court of Appeals.  Plaintiffs (collectively "ABT") object, arguing that Emerson's Bill of
Costs should be denied in its entirety because ABT prevailed on the vast majority of the
issues at trial, while Emerson only prevailed on a single dispositive issue on appeal.
Alternatively, ABT argues that several of the costs Emerson is seeking are unreasonable
and/or not taxable pursuant to 28 U.S.C. §§ 1821 and 1920.  The Court concludes that
Emerson is entitled to $45,751.43 of the $47,916.00 it requests.

## Procedural Background

ABT asserted that thermostats manufactured and/or sold by Emerson and introduced into the market in 2006 infringed upon two patents owned by ABT ("the '017 Patent" and "the '268 Patent").[1]  By way of counterclaim, Emerson sought a declaratory judgment that none of the thermostats it sold infringed the ABT patents; that the patents were invalid; and that the patents were unenforceable because, among other things, during the patenting process, ABT withheld information from the United States Patent and Trademark Office regarding the scope and content of prior art.  In support of a motion for summary judgment, Emerson argued that the patents were invalid due to obviousness.  The Court denied that motion on January 16, 2013 (Doc. No. 356), and the case proceeded to a jury trial.  The trial started on Monday, February 11, 2013, and continued through Friday, February 15, 2013.  The trial adjourned for the weekend and continued on Monday, February 18, 2013.  The jury returned a verdict on Thursday, February 21, 2013.

Armin Rudd, the sole named inventor on the patents, testified as an expert technical consultant for ABT.  ABT's witness Tim Cromley testified concerning the sales and profits Emerson allegedly made from the patents.  John Vogelzang, Jeffrey Siegel, Max Sherman, and Richard Bero served as expert witnesses for Emerson.  Don Fugler and Thomas Scavone were deposed by Emerson, but did not testify at trial.

---

[1]     ABT's original complaint named four Defendants.  Each of the other three Defendants settled before trial.  On the eve of trial, ABT dropped the '268 Patent claim.

The jury returned its verdict on February 21, 2013, following eight days of actual trial. ABT was awarded $311,379 in damages based on the jury's finding that Emerson was a willful infringer of the '017 Patent. None of Emerson's counterclaims was successful at trial. The Court found, post-trial, that there was no inequitable conduct relating to ABT's prosecution of the patent in question and that Emerson's pre-lawsuit infringement was not willful. The Court awarded costs to Plaintiffs as the prevailing parties in the amount of $39,181.34. (Doc. No. 566.)

On August 19, 2015, the United States Court of Appeals for the Federal Circuit reversed, finding that ABT's '017 patent was invalid by reason of obviousness. (Doc. No. 570 at 3.) On November 11, 2015, Emerson submitted its Bill of Costs, the contested items of which will be discussed below. On November 16, 2015, this Court entered judgment on remand in favor of Emerson.

## DISCUSSION

Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, "costs—other than attorney's fees—should be allowed to the prevailing party." The term "costs," as used in Rule 54(d)(1), is defined in 28 U.S.C. § 1920, which enumerates the expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d). [2] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Within

---

[2] Section 1920 provides as follows:

A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for

the statutory framework, the Court has discretion to determine and award costs as appropriate in a given case. *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 930 (8th Cir. 2011); *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 601 (8th Cir. 2009).

The party seeking to recover costs must fully establish the amount of compensable costs and expenses to which it is entitled. *In re Williams Sec. Litig. WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009). Although the taxation of costs under Rule 54(d) is permissive, the Eighth Circuit has long held that there is a strong presumption that the prevailing party is entitled to an award of costs. *Thompson v. Wal Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006). Where the losing party raises a general objection to an award of costs as inequitable, he bears the burden of demonstrating such inequity. *Finan v. Good Earth Tools, Inc.*, No. 4:06-CV-878 CAS, 2008 WL 1805639, at *9 (E.D. Mo. Apr. 21, 2008) (citing *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002)).

## **Prevailing Party**

ABT argues that Emerson's request for costs should be denied because "ABT was successful on all of its claims at trial" and in defending against all of Emerson's pre-trial motions, while Emerson "lost all of its defenses and counterclaims at trial," and the "sole

exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

issue" that Emerson succeeded on was the claim that the '017 patent was invalid, on appeal. (Doc. No. 574 at 2.) Alternatively, ABT argues that "Emerson's recoverable costs should be limited to those incurred prior to [Emerson's] motion for summary judgment" because if this Court "had granted the motion [for summary judgment], much of Emerson's trial costs would have been eliminated." (Doc. No. 574 at 3.)

Emerson responds that it is the only prevailing party in this case because the final judgment alone is determinative of which party prevailed. Emerson argues that ABT's success on some pre-trial motions, or even at trial, does not make it the prevailing party, as the final judgment does not award ABT any relief.

A prevailing party is one "in whose favor a judgment is rendered." *Firefighters' Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 905 (8th Cir. 2000) (citation omitted). Here, final judgment was rendered in favor of Emerson. ABT's victories at trial were rendered moot by its defeat on appeal. Emerson is therefore the prevailing party in this case. Further, ABT's request to limit costs to those incurred before Emerson's motion for summary judgment was denied is unavailing because ABT itself argued against summary judgment.

**RealTime and Expedited Transcripts**

Emerson requests $35,332.45 in total for transcript costs. ABT objects to the costs for RealTime deposition transcripts, in the total amount of $1,945.90, for the following depositions: Cromley on June 20, 2012 ($448.00); Fugler on June 21, 2012 ($169.60); Siegel on June 22, 2012 ($452.80); Rudd on July 9, 2012 ($447.10) and August 9, 2012 ($238.00); and Scavone on July 12, 2012 ($190.40). ABT also objects to the costs for

expedited transcripts, in the total amount of $6,522.82, for the following depositions: Rudd on July 9, 2012 ($1,633.23) and on August 9, 2012 ($767.20); Cromley on June 20, 2012 ($1,767.00) and on July 20, 2012 ($394.20); and Siegel on June 22, 2012 ($1,961.19).

ABT argues that the RealTime and expedited transcripts costs should not be allowed as they were a convenience and luxury for counsel, not a necessity. Emerson responds that RealTime transcripts were necessary because it was important to track testimony during complex and technical depositions so that questions could be accurately phrased and repeated, the answers could be immediately read, and the testimony could be narrowed. Emerson further argues the expedited transcripts were necessary because many depositions were scheduled at the end of the discovery period and it was therefore important to have deposition transcripts as soon as possible so that the deadline for dispositive motions could be met.

In order to be taxable, transcript costs must be "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Interactive RealTime transcripts have been found to be necessary expenses in complex cases. *See, e.g.*, *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 419 (6th Cir. 2005) (holding that RealTime transcripts were necessarily obtained for use at trial in a lengthy trade secrets case involving a voluminous record and many witnesses), *abrogated on other grounds by Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997 (2012); *WesternGeco L.L.C. v. ION Geophysical Corp.*, 953 F. Supp. 2d 731, 761 (S.D. Tex. 2013) (finding that RealTime transcripts were a necessary cost in a lengthy and complex patent case where the opposing party had filed numerous briefs

requiring responses), *aff'd in relevant part*, No. 2013-1527, 2016 WL 5112047 (Fed. Cir. Sept. 21, 2016). Given the complicated and technical nature of this lawsuit, the Court finds that the costs for the RealTime transcripts at issue are recoverable.

However, the Court believes that Emerson's request for the costs of the expedited transcripts is not reasonable because Emerson has not shown that expedited transcripts were necessary. *See Thirty & 141, LP v. Lowe's Home Ctrs., Inc.*, No. 4:06-CV-01781-SNL, 2008 WL 1995344, at *1 (E.D. Mo. May 6, 2008) ("A party seeking reimbursement for expedited services should generally demonstrate necessity with regard to the same."); *Glastetter v. Sandoz Pharms. Corp.*, No. 1:97-CV-00131, 2000 WL 34017154, at *4 n.3 (E.D. Mo. Oct. 3, 2000) (explaining that costs for expedited transcripts are allowed only where the exigencies and deadlines which arise during litigation justify the cost of expedited transcripts) (citation omitted). Emerson has not demonstrated that it could not have arranged the depositions in question earlier, so that it would not have needed to take so many depositions so close to the dispositive motions deadline. The Court will exercise its discretion and reduce the transcript costs to the government rate for non-expedited transcripts at $3.65 per page.[3] *See Am. Guar. & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, No. 4:06CV655RWS, 2010 WL 1935998, at *6 (E.D. Mo. May 10, 2010) (reducing expedited transcript costs to the government rate for non-expedited transcripts).

In total, the Court will reduce Emerson's request for transcript costs by $2,781.57, accounting for the following deposition transcripts charged at the expedited rate: Rudd's deposition on July 9, 2012 (263 pages), Rudd's deposition on August 9, 2012 (140

---

[3]   http://www.moed.uscourts.gov/maximum-transcript-rates

pages), Cromley's deposition on June 20, 2012 (285 pages), Cromley's deposition on

July 20, 2012 (54 pages), and Siegel's deposition on June 22, 2012 (283 pages). Thus,

the Court will grant transcript costs in the total amount of $32,550.88.

**Lodging and Travel Expenses of Witnesses**

The witness fee specified in 28 U.S.C. § 1920(3) is defined in 28 U.S.C. § 1821,

which provides that a witness shall be paid for reasonable airfares, taxi fares, parking

fees, and subsistence allowance when an overnight stay is required. The subsistence

allowance shall not "exceed the maximum per diem allowance prescribed by the

Administrator of General Service." 28 U.S.C. § 1821(d)(2). Evidence of actual costs

must be furnished for these costs to be recoverable. *Id.* § 1821(c)(1).

**Sherman**

Emerson submitted, including by way of supplementation,[4] receipts for Sherman's

airline tickets in the amount of $3,208.20, private car use in the amount of $127.05, taxi

---

[4]    Emerson supplied additional invoices and receipts as attachments to its reply brief,
which Emerson claims were inadvertently omitted from the Bill of Costs. The Court will
allow Emerson's supplementation of record. *See Nat'l Ben. Programs, Inc. v. Express
Scripts, Inc.*, No. 4:10CV00907 AGF, 2012 WL 2326071, at *1 (E.D. Mo. June 19, 2012)
(allowing supplemental filing of a sworn affidavit to the bill of costs with the reply brief);
*Waters v. City of St. Peters*, No. 406CV876SNL, 2007 WL 1880740, at *1 (E.D. Mo.
June 29, 2007) (allowing the defendants to supplement their bill of costs with itemized
receipt when the court was unable to discern the purposes of the costs).

Because Emerson initially submitted only part of Sherman's receipts, some of the
parties' arguments are based on incomplete records and false assumptions. For example,
Emerson argues that it was reasonable for Sherman to incur lodging expenses during the
weekend when the trial was adjourned, while in fact Sherman travelled back to
California, where he resided, for that weekend, and thus did not incur any lodging
expenses during that weekend. The Court will reconstruct Sherman's travel and lodging
expenses based on the actual receipts submitted by Emerson, and will tax costs

fares in the amount of $447.65, and parking fees in the amount of $181.76, all in connection with his travels from San Francisco to Chicago for deposition and to St. Louis for trial. ABT does not object to those costs, and the Court finds them to be reasonable. Thus, the Court will tax $3,964.66 for Sherman's travel expenses.

A hotel receipt indicates that Sherman incurred two nights' lodging expenses while in Chicago. ABT argues that Emerson should only be allowed to recover for one night's lodging for Sherman's deposition in Chicago. Even though the deposition only lasted one day, the Court thinks it reasonable to tax two nights' lodging expenses. *See ABT Sys., LLC v. Emerson Elec. Co.*, No. 4:11CV00374 AGF, 2014 WL 6851483, at *3 (E.D. Mo. Dec. 3, 2014). Accordingly, the Court will tax two nights' lodging expenses for Sherman's stay in Chicago at the statutory maximum rate, $155.00 per night,[5] for a total of $310.00.

During the first week of trial in St. Louis, Sherman testified only on Friday, February 15, 2013. During the second week of trial, Sherman testified on Tuesday, February 19, and Wednesday, February 20, 2013. Sherman's hotel receipts indicate that he incurred five nights' lodging expenses for the first week of trial, from the night of Sunday, February 10, 2013, the day before trial commenced, through the night of Thursday, February 14, 2013, the day before the trial adjourned for the weekend. The receipts also indicate that he incurred two nights' lodging expenses during the second week of the trial, for the night of Monday, February 18, 2013, when the trial resumed, accordingly.

---

[5]   http://www.gsa.gov/portal/category/100120.

and the night of Tuesday, February 19, 2013, the night before Sherman's last day of testimony on February 20, 2013. In total, Emerson submitted receipts for seven nights' lodging in connection with Sherman's trial attendance.

ABT argues that Emerson should only recover three nights' lodging expenses as Sherman only testified on three days. Emerson argues that it was hard to tell when and for how long Sherman's trial testimony would be needed, and that as Emerson's liability expert witness, Sherman needed to be at trial every day to know what facts were introduced into evidence and what the jury was told by other witnesses. The Court agrees with Emerson that Sherman's attendance during the whole trial was necessary given that he was Emerson's liability expert witness. *See Baisden v. I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 981 (S.D. Tex. 2011) (awarding an extra night's lodging cost beyond the day a witness testified, where the witness needed to observe another witness's testimony before he could testify). Therefore, the Court will tax seven nights' lodging expenses for Sherman's trial attendance at the statutory maximum rate of $104.00 per night,[6] for a total of $728.00.

In total, the Court will tax $5,002.66 for Sherman's travel and lodging expenses.

### **Bero and Vogelzang**

Emerson seeks $1,725.81 for Bero's travel expenses, and $1,289.83 for Vogelzang's travel expenses. ABT contends that Bero's and Vogelzang's travel expenses should be denied because the receipts are not itemized. Emerson attached the following supporting documentation regarding Bero's and Vogelzang's travel expenses: a

---

[6]   http://www.gsa.gov/portal/category/100120.

receipt from Bero for travel to and from the airport, airfare, and cabs, in a lump sum of $1,492.95; and, a travel agent receipt of $1,028.71 for Vogelzang indicating the price of airfare ($1,001.67) and the agent's fee ($27.04).

Emerson argues that while itemized receipts were not provided for Bero's and Vogelzang's travel, documents in the record clearly reflect the cost of Vogelzang's travel, and Bero's receipt, though not from an airline, is acceptable because ABT has not provided any reason to doubt its trustworthiness. Although Bero's receipt for travel is not itemized into specific categories, all the expenses listed are recoverable pursuant to 28 U.S.C. § 1821(c)(1) and (3). Vogelzang's receipt is itemized into "airfare" and "agent's fee." The Court concludes that Emerson has provided acceptable "evidence of actual cost" for Bero's and Vogelzang's travel expenses. Therefore, the Court will tax those costs accordingly.

ABT also objects to Bero's and Vogelzang's travel expenses on the ground that they are not at the most economical rate reasonably available. However, ABT does not provide any evidence to support its assertion. The Court finds that the travel expenses of $2,521.66 incurred by Bero and Vogelzang are reasonable. ABT lastly points out that Vogelzang's taxi costs should be reduced by $5.00 since $50.00 is billed while the receipt shows the taxi cost $45.00. The Court reviewed the receipt and agrees. Accordingly, the Court will reduce Volgelzang's travel expense by $5.00.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Emerson Electric's Bill of Costs is **GRANTED** in part and **DENIED** in part, in accordance with the findings set forth above.

**IT IS FURTHER ORDERED** that the Clerk of Court shall tax the following costs against Plaintiffs and in favor of Defendant in this cause:

| | |
|---|---|
| Fees of the Clerk: | $      300.00 |
| Transcripts and Exhibits: | $ 32,550.88 |
| Witness Attendance: | $      760.00 |
| Travel and Subsistence Fees: | $   9,103.17 |
| Exemplification and Copying Fees: | $   3,037.38 |
| **TOTAL:** | **$  45,751.43** |


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2016.